# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

OCEANFIRST BANK N.A.,        *

      Plaintiff,              *

v.                        *        Civ. No. DLB-21-3275

BRINK'S, INC.,            *

      Defendant.           *

## MEMORANDUM OPINION

OceanFirst Bank N.A. ("OceanFirst"), filed suit against Brink's, Inc. ("Brink's), directly and as successor in interest to Dunbar Armored, Inc. ("Dunbar"), in relation to an agreement to transport $500,000 of bank funds that never arrived at its destination.  ECF 1.  OceanFirst alleges breach of contract, negligence, unjust enrichment, conversion, and fraudulent misrepresentation.  *Id.* ¶¶ 37–87.  Brink's answered the breach of contract and conversion counts.  ECF 14.  It moves to dismiss the remaining counts.  ECF 13.  The motion is ripe for disposition.  ECF 19 & 20.  No hearing is necessary.  Loc. R. 105.6 (D. Md. 2021).  For the following reasons, the motion to dismiss is granted in part and denied in part.

## I.    Background

OceanFirst is a regional bank that serves customers throughout New Jersey and in the metropolitan areas of Boston, New York, Philadelphia, Baltimore, and Washington, D.C.  ECF 1, ¶ 4.  In March 2017, OceanFirst and Dunbar entered into an agreement, service contract number 23001677 ("the Agreement").  *Id.* ¶ 9.  The Agreement covered Dunbar's "receipt and delivery of sealed containers containing currency, coins, checks, securities[,] or other valuable items from a depository to" other OceanFirst branches, including a branch in Brick, New Jersey ("OceanFirst Brick").  *Id.*  According to OceanFirst,

[p]ursuant to the Agreement, Terms[,] and Conditions ¶ 3, responsibility for containers under the Contract "shall begin when said containers have been accepted and receipted for" by Dunbar and shall end "when said containers have been accepted and receipted for by the consignee or upon return to the shipper, if for any reason deliver to the consignee may not be completed."

*Id.* ¶ 11. Brink's is a "transportation and logistics company" incorporated in Delaware and headquartered in Virginia. *Id.* ¶ 5. In 2019, it acquired Dunbar, which was dissolved into Brink's in September 2019. *Id.* ¶ 1 n.1.

On or around August 26, 2020, OceanFirst placed order number 47269477 with Brink's for the delivery of $500,000 from an OceanFirst location in Philadelphia to OceanFirst Brick. *Id.* ¶¶ 2, 14. Brink's confirmed the order and issued a packing sheet number. *Id.* ¶ 15. On August 27, 2020, Brink's retrieved the $500,000 from the Philadelphia location, began to carry the amount "on its daily reconciliation sheet," and assigned the order a bag number to allow the order to be traced through delivery. *Id.* ¶¶ 2, 16. But the order never arrived at OceanFirst Brick. *Id.* ¶ 18.

On September 1, 2020, the head teller at OceanFirst Brick informed Brink's that the order was not received. *Id.* ¶ 19. On September 3, 2020, Senior Vice President and Director of Retail Banking at OceanFirst Alicia Smith asked Brink's to escalate the issue internally. *Id.* ¶ 20. Around September 10, 2020, OceanFirst informed Brink's that it would not renew the Agreement, which was scheduled to expire on December 10, 2020. *Id.* ¶ 22.

Between September 10, 2020 and September 9, 2021, OceanFirst communicated with Brink's over the phone and through email on approximately a weekly basis. *Id.* ¶ 23. Brink's repeatedly reassured OceanFirst an investigation into the missing $500,000 was ongoing. *Id.* ¶¶ 23, 24. Specifically, on February 11, 2021, Brink's Account Director, Michele Emery; Vice President, Sales, Danny J. Pack; Regional Vice-President, Bruce Fields; and manager, Heriberto Cuevas informed OceanFirst that the investigation into the missing $500,000 was proceeding. *Id.*

¶ 25.   During a March 5, 2021 call, Trip Davis, Brink's Vice President of National Accounts, assured OceanFirst that the investigation into the missing delivery continued.  *Id.* ¶ 26.   Around May 2021, Kelvin Roussety, "Brink's Head of CIT," requested additional information from OceanFirst regarded the missing delivery.  *Id.* ¶ 27.[1]   Between May and September 2021, Brink's continued to assure OceanFirst the investigation was ongoing.  *Id.* ¶ 28.   These assurances notwithstanding, on September 24, 2021, Brink's Director of Customer Experience Aaron Chaney informed OceanFirst's Vice President Darlene Davis-Fern "that Brink's was taking the position that the [m]atter [of the missing $500,000] was too old for further discussion."  *Id.* ¶ 29.

OceanFirst alleges "Brink's has provided no documentation of delivery, receipt, or acceptance" of the $500,000 and has "admitted that it has no such documentation."  *Id.* ¶ 31. Brink's provided no explanation of the disappearance of the $500,000 "despite repeatedly representing . . . that it was investigating the [m]atter for months."  *Id.* ¶ 32.   Brink's did not reimburse OceanFirst for the loss, "which was Brink's responsibility under the Agreement."  *Id.* ¶ 33.   Brink's instead "failed to accept responsibility and repeatedly delayed resolving the [m]atter by requesting further information from [OceanFirst], which [OceanFirst] provided, and by representing that [Brink's] had not yet completed its investigation, and therefore, did not have an answer for [OceanFirst.]"  *Id.* ¶ 34.   "These representations . . . were false and were made knowingly and intentionally to induce [OceanFirst] to take no action against it as a delay tactic to avoid liability."  *Id.* ¶ 35.   "Brink's intentionally led [OceanFirst] to believe that it was working in good faith to resolve the [m]atter, while it was instead acting in bad faith and merely delaying [OceanFirst's] recovery of its lost funds."  *Id.* ¶ 36.

---

[1] In paragraphs 25, 26, and 27, the complaint refers to the dates February 11, 2020, March 5, 2020, and May 2020.  OceanFirst represents these are typographical errors and that the communications took place in 2021.  ECF 19, at 12 n.2.

OceanFirst alleges Brink's was "grossly negligent in performing its obligation under the Agreement to transport and deliver funds . . . ." *Id.* ¶ 46. It further alleges Brink's owed it a duty of care because Brink's "held itself out to have special expertise in this field" and because OceanFirst "entrusted it with the highly sensitive and critical duty of storing and transporting its high-value goods." *Id.* ¶¶ 47–48. The defendant's allegedly negligent acts were the failure to deliver $500,000 to and from OceanFirst locations, to provide proof the funds were delivered, "to conduct a good faith investigation into the missing funds," and "to accept any responsibility for its negligence." *Id.* ¶ 52.

OceanFirst also alleges Brink's was unjustly enriched when it accepted the $500,000 but failed to deliver the money to OceanFirst Brick. *Id.* ¶¶ 57–58. It alleges Brink's knowingly accepted, acquired, and receipted the $500,000, but failed to deliver or provide any proof of delivery, to explain the cause or location of the missing funds, and to investigate or accept responsibility for the missing delivery. *Id.* OceanFirst alleges these facts, in conjunction with the fact that Brink's admits it cannot prove it delivered the funds and that Brink's possessed the funds and were responsible for them, constitute unjust enrichment. *Id.* ¶¶ 59–60.

Finally, OceanFirst alleges Brink's fraudulently misrepresented its investigation into the missing $500,000. *Id.* ¶¶ 74–87. It alleges Brink's knowingly, intentionally, or recklessly made false representations. *Id.* ¶¶ 80–81. OceanFirst believed and relied on the representations that Brink's was "working to resolve the issue in good faith." *Id.* ¶ 82. "Had [OceanFirst] known that Brink's' representations were false and made with the intent to mislead [it] and to induce [it] to take no action against Brink's, [it] would have immediately filed a claim" against Brink's for the missing $500,000. *Id.* ¶ 85. Under the terms of the Agreement, "within ten (10) days after discovery of any loss, but in no event more than (30) days after delivery to DUNBAR of the funds

. . . CUSTOMER shall give notice of claim in writing to DUNBAR." *Id.* ¶ 13.  OceanFirst does not specify whether it ever filed a claim pursuant to that provision.  It alleges it "spent months and incurred the time and expense of following-up with Brink's via weekly phone calls and via e-mail with the expectation that Brink's was, as it represented . . . working to resolve the matter." *Id.* ¶ 86.  Damages resulted, "including the time lost and expenses incurred in working in good faith to resolve the matter, and the interest forgone over the past year on the $500,000 . . . ." *Id.* ¶ 87.

## II.    Standard of Review

Under Rule 12(b)(6), a party may seek dismissal for failure "to state a claim upon which relief can be granted." *Robertson v. Anderson Mill Elementary Sch.*, 989 F.3d 282, 290 (4th Cir. 2021) (quoting Fed. R. Civ. P. 12(b)(6)).  To survive the challenge, the opposing party must have pleaded facts demonstrating it has a plausible right to relief from the Court.  *Lokhova v. Halper*, 995 F.3d 134, 141 (4th Cir. 2021) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  A plausible claim is more than merely conceivable or speculative.  *See Holloway v. Maryland*, 32 F.4th 293, 299 (4th Cir. 2022).  The allegations must show there is "more than a sheer possibility that the defendant has acted unlawfully." *Int'l Refugee Assistance Project v. Trump*, 961 F.3d 635, 648 (4th Cir. 2020) (quoting *Iqbal*, 556 U.S. at 678)).  But the claim does not need to be probable, and the pleader need not show "that alternative explanations are less likely" than their theory. *Jesus Christ is the Answer Ministries, Inc. v. Baltimore Cnty.*, 915 F.3d 256, 263 (4th Cir. 2019) (quoting *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015)).

When ruling on a Rule 12(b)(6) motion, the Court must accept the pleaded allegations as true and draw all reasonable inferences in favor of the pleader. *Williams v. Kincaid*, 45 F.4th 759, 765 (4th Cir. 2022).  But the Court does not accept "legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." *United States ex rel. Taylor v.*

*Boyko*, 39 F.4th 177, 189 (4th Cir. 2022) (quoting *United States ex rel. Nathan v. Takeda Pharms. N. Am., Inc.*, 707 F.3d 451, 455 (4th Cir. 2013)).   Merely reciting a claim's elements "and supporting them by conclusory statements does not meet the required standard."  *Sheppard v. Visitors of Va. State Univ.*, 993 F.3d 230, 234 (4th Cir. 2021) (quoting *ACA Fin. Guar. Corp. v. City of Buena Vista*, 917 F.3d 206, 212 (4th Cir. 2019)).  The Court does not "does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses."  *Ray v. Roane*, 948 F.3d 222, 226 (4th Cir. 2020) (quoting *Tobey v. Jones*, 706 F.3d 379, 387 (4th Cir. 2013)).

**III.     Discussion**

**A.   Negligence**

The parties agree that Maryland law applies.   To state a claim of negligence under Maryland law, the plaintiff must allege four elements: "(1) the defendant owes the plaintiff a duty of care; (2) the defendant breached that duty; (3) the plaintiff sustained an injury or loss; and (4) the defendant's breach of the duty was the proximate cause of the plaintiff's injury."  *Balfour Beatty Infrastructure, Inc. v. Rummel Klepper & Kahl, LLP*, 155 A.3d 445, 451 (Md. 2017). Brink's argues OceanFirst's claim for negligence fails because OceanFirst alleges only economic loss and has not identified a duty independent of the Agreement.  "Absent a duty of care[,] there can be no liability in negligence."  *Jacques v. First Nat'l Bank of Md.*, 515 A.2d 756, 758 (Md. 1986) (citing *Ashburn v. Anne Arundel Cnty.*, 510 A.2d 1078, 1083 (Md. 1986)).

"At its core, the determination of whether a duty exists represents a policy question of whether the specific plaintiff is entitled to protection from the acts of the defendant."  *Gourdine v. Crews*, 955 A.2d 769, 783 (Md. 2008).  While "[t]here is no set formula for the determination of whether a duty exists[,]" *Doe v. Pharmacia & Upjohn Co.*, 879 A.2d 1088, 1092 (Md. 2005), the Maryland Court of Appeals has identified "two major considerations: the nature of the harm likely

to result from a failure to exercise due care, and the relationship that exists between the parties[,]" *Jacques*, 515 A.2d at 759.  Where, as here, "the failure to exercise due care creates a risk of economic loss only, courts have generally required an intimate nexus between the parties as a condition to the imposition of tort liability." *Id.*

In some circumstances, "contractual privity or its equivalent" may satisfy the intimate nexus requirement. *Chubb & Son v. C & C Complete Servs., LLC*, 919 F. Supp. 2d 666, 675 (D. Md. 2013) (citing *Jacques*, 515 A.2d at 759–60).  However, "a contractual obligation, by itself, does not create a tort duty.  Instead, the duty . . . must have some independent basis." *Mesmer v. Md. Auto. Ins. Fund*, 725 A.2d 1053, 1058 (Md. 1999); *see also Jacques*, 515 A.2d at 759. "Maryland courts have recognized such an independent duty exists in various contexts, including those involving vulnerable parties, professional occupations, and principal-agent relationships." *Nat. Prods. Sols., LLC v. Vitaquest Int'l, Inc.*, No. CCB-13-436, 2014 WL 6383482, at *9 (D. Md. Nov. 13, 2014).  At the same time, "courts applying Maryland law have 'attempted to limit remedies to contract law where the loss is purely economic and the parties engaged in arms-length commercial bargaining.'" *Plum House IV, Inc. v. Wells Fargo Merchant Servs., LLC*, No. CCB-15-2294, 2016 WL 337492, at *4 (D. Md. Jan. 28, 2016) (quoting *Chubb & Son*, 919 F. Supp. 2d at 675) (quoting *Gruppo Essenziero Italiano, S.p.A. v. Aromi D'Italia, Inc.*, No. CCB-08-65, 2011 WL 3207555, at *8 (D. Md. July 27, 2011) (citing cases))).

OceanFirst argues that Brink's "held itself out to have special expertise in the field of securely transporting high-value goods" and that Brink's therefore had a duty independent from the one arising under the Agreement.  OceanFirst cites no authority for this position.  On the contrary, this case concerns a run-of-the-mill contract between parties with equal bargaining strength.  Both OceanFirst and Brink's are sophisticated, commercial entities.  OceanFirst is a

regional bank with branches along the Eastern Seaboard that engaged in arms-length negotiations with Dunbar/Brink's, agreed to contractual terms, and suffered an economic loss.  OceanFirst does not allege any facts that would make this case analogous to one of the instances where courts have found a duty existed independent from the contract.  OceanFirst is not a "peculiarly vulnerable party" such as a patient who "places a great degree of personal trust and confidence" in a doctor.  *See Martin Marietta Corp. v. Int'l Telecomms. Satellite Org.*, 991 F.2d 94, 98 (4th Cir. 1992).  Nor is it "an unsophisticated consumer unfamiliar with the subject matter of the contract, who relied on representations of someone holding himself out as possessing special expertise."  *See id.*  Thus, while OceanFirst and Brink's may be in contractual privity, the nexus between them lacks the requisite degree of intimacy to give rise to a tort duty independent from the contract.  *See id.* (affirming dismissal of negligence claim because "[e]qually sophisticated parties . . . should be held to only those duties specified by the agreed-upon contractual terms and not to general tort duties imposed by state law"); *Plum House IV*, 2016 WL 337492, at *4 (rejecting negligence claim where the parties were "commercial enterprises that engaged in an arms'-length transaction" and were equally sophisticated); *Nat. Prod. Sols.*, 2014 WL 6383482, at *9 (rejecting negligence claim arising out of "a plain vanilla manufacturing relationship between 'sophisticated parties in positions of equal bargaining strength'") (quoting *Martin Marietta Corp. v. Int'l Telecomms. Satellite Org.*, 763 F. Supp. 1327, 1332 (D. Md. 1991), *aff'd in part, rev'd in part*, 991 F.2d 98 (4th Cir. 1992)); *Chubb & Son*, 919 F. Supp. 2d at 675 (same).

OceanFirst counters that Maryland courts have recognized the viability of negligence claims based on misfeasance occurring during the performance of contractual duties.  For support, the bank points to language from *Mesmer v. Maryland Automobile Insurance Fund*, 725 A.2d 1053 (Md. 1999).  The Court is not persuaded.  In *Mesmer*, the Maryland Court of Appeals delineated

two general categories of cases involving a governing contract: (1) one in which "the defendant has proceeded on the basis that a contractual obligation exists, has undertaken that obligation, and has undertaken it in violation of the appropriate standard of care" and in which "the plaintiff *may, in some circumstances*, maintain a tort action"; and (2) a separate category in which the defendant has failed "even to begin or attempt performance of an agreement" and in which usually "no tort action will lie." *Id.* at 1059 (emphasis added). OceanFirst argues this case falls into the first category because Brink's began performing its contractual obligation, and as a result, the negligence claim is viable. But *Mesmer* did not depart from the principle that "[a] contractual obligation, by itself, does not create a tort duty." *Id.* at 1058. The Court of Appeals was quite clear that, even when a defendant has begun performance on a contract, the defendant will only be liable "in some circumstances[.]" *Id.* at 1059. The Court of Appeals offered as examples of such circumstances, *inter alia*, "an attorney or an abstractor examining a title [and] a physician treating a patient." *Id.* at 1060. Thus, nothing in *Mesmer* permits a plaintiff to bypass the intimate nexus requirement. Rather, that requirement is one of the ways courts have defined the limited circumstances in which a party that has begun performance may be sued in tort. For the reasons already discussed, OceanFirst has not plausibly alleged the requisite intimate nexus.

OceanFirst next argues Brink's "had an independent duty to maintain the safety of [the] funds while in transport and to investigate and track down any funds that Brink's negligently misplaced while in transport." ECF 19, at 7. The only case it cites in support of that proposition is *Brink's Inc. v. City of New York*, 717 F.2d 700 (2d Cir. 1983). *See* ECF 19, at 7–8. That nearly 40-year-old case is distinguishable. In *Brink's*, New York had contracted with Brink's to collect money from city parking meters. 717 F.2d at 702. After discovering Brink's employees repeatedly stole money from the parking meters, New York filed suit against Brink's alleging breach of

contract and negligent supervision its employees. *Id.* The city also alleged Brink's negligently failed to investigate its employees. *Id.* The Second Circuit affirmed a jury verdict finding Brink's negligent and awarding punitive damages. *Id.* On appeal, Brink's argued the jury instruction on its duty to investigate its employees was contrary to New York law. *Id.* at 714. The Second Circuit rejected this argument because, under New York law, the duty to investigate arose from the duty to supervise, which required "such an oversight and supervision of . . . servants, that if they afterwards become habitually or notoriously incompetent or unfit, from carelessness or bad habits, to perform their duties, this incompetency, if long continued, should be discovered and guarded against." *Id.* (quoting *Whittaker v. Delaware & Hudson Canal Co.*, 27 N.E. 1042, 1042 (N.Y. 1891)). OceanFirst does not identify any duty under Maryland law comparable to the duty under New York law at issue in *Brink's*. Nor does it adequately allege that the $500,000 was lost due to employee misconduct or that, even if it was, such misconduct was so "habitual," "notorious," or "long continued" that Brink's was under a duty to discover and correct it.

Because OceanFirst has failed to plead Brink's owed it a duty of care recognized at law, the negligence claim is dismissed. *See Hillman v. Flagstar Bank, FSB*, No. PX-20-2486, 2021 WL 3681155, at *5–6 (D. Md. Aug. 19, 2021) ("Because [the plaintiff] has failed to plead any special duty of care that the Bank owed to her, and the Court cannot conceive of one, the claim must fail as a matter of law.").

### B.  Unjust Enrichment

To establish a claim of unjust enrichment, a plaintiff must show (1) a benefit conferred upon the defendant by the plaintiff; (2) an appreciation or knowledge by the defendant of the benefit; and (3) the acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without payment of

its value. *Hill v. Cross Country Settlements, LLC*, 936 A.2d 343, 351 (Md. 2007) (citing *Berry & Gould, P.A. v. Berry*, 757 A.2d 108, 113 (Md. 2000)). "[T]he touchstone of unjust enrichment is a defendant's gain." *Baehr v. Creig Northrop Team, P.C.*, 953 F.3d 244, 257 (4th Cir. 2020) (citing *Hill*, 936 A.2d at 352). The claim "is not aimed at compensating the plaintiff, but at forcing the defendant to disgorge benefits that it would be unjust for him to keep." *Hill*, 936 A.2d at 352 (quoting *Mass Transit Admin. v. Granite Constr. Co.*, 471 A.2d 1121, 1126 (Md. Ct. Spec. App. 1984)). Where the alleged benefit is money, as here, "the burden is on the plaintiff to establish that the defendant holds plaintiff's money and that it would be unconscionable for him to retain it." *State Farm Mut. Auto. Ins. Co. v. Slade Healthcare, Inc.*, 381 F. Supp. 3d 536, 559 (D. Md. 2019) (quoting *Bank of Am. Corp. v. Gibbons*, 918 A.2d 565, 569 (Md. Ct. Spec. App. 2007) (quoting *Plitt v. Greenberg*, 219 A.2d 237, 241 (Md. 1966))).

Brink's argues the unjust enrichment claim should be dismissed because OceanFirst failed to plead Brink's inequitably accepted or retained the $500,000. The Court agrees. Per OceanFirst's own allegations, Brink's was fulfilling a contractual obligation under the Agreement at the time it accepted the $500,000. Brink's therefore did not accept the money under inequitable circumstances. OceanFirst also stops short of alleging that Brink's has retained the missing funds. OceanFirst contends it has adequately pled the third element by alleging that Brink's took possession of the money but never delivered it to OceanFirst Brick. But one-time possession is not the same as retention, and the ultimate issue in an unjust enrichment claim is whether the defendant continues to hold the benefit unjustly. *See* Restatement (Third) of Restitution & Unjust Enrichment § 51 cmt. e (2011) ("The profit for which the wrongdoer is liable . . . is the net increase in the assets of the wrongdoer, to the extent that this increase is attributable to the underlying

wrong.").  Because OceanFirst does not allege Brink's retained the $500,000, it has not adequately alleged an unjust enrichment claim, and the claim must be dismissed.

### C.  Fraudulent Misrepresentation

To state a fraudulent misrepresentation claim under Maryland law, a plaintiff must allege five elements:

> (1) that a representation made by a party was false; (2) that either its falsity was known to that party or the misrepresentation was made with [ ] reckless indifference . . . ; (3) that the misrepresentation was made for the purpose of defrauding some other person; (4) that that person not only relied upon the misrepresentation but had the right to rely upon it with full belief of its truth, and that he would not have done the thing from which damage resulting if it had not been made; and (5) that that person suffered damage directly resulting from the misrepresentation.

*Bradley v. Bradley*, 56 A.3d 541, 548–49 (Md. Ct. Spec. App. 2012) (quoting *B.N. v. K.K.*, 538 A.2d 1175, 1182 (Md. 1988) (citing *Suburban Props. Mgmt. v. Johnson*, 204 A.2d 326, 329 (Md. 1964))).  Brink's argues OceanFirst has not pleaded each element with the required particularity under Federal Rule of Civil Procedure 9(b).

Rule 9(b) provides a heightened pleading standard for allegations of fraud.  It states, in "alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  Such circumstances include "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby."  *Weidman v. Exxon Mobil Corp.*, 776 F.3d 214, 219 (4th Cir. 2015) (quoting *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999)).  Allegations about reasonable, detrimental reliance "must [also] be pleaded with particularity."  *Learning Works, Inc. v. Learning Annex, Inc.*, 830 F.2d 541, 546 (4th Cir. 1987).  Allegations regarding a party's mindset, however, "may be alleged generally."  Fed. R. Civ. P. 9(b).  Rule 9(b) has four purposes: it (1) "ensures the defendant has sufficient information to formulate a defense by putting

it on notice of the conduct complained of"; (2) "protect[s] defendants from frivolous suits"; (3) "eliminate[s] fraud actions in which all the facts are learned after discovery"; and (4) "protects defendants from harm to their goodwill and reputation." *Harrison*, 176 F.3d at 784 (quoting *United States ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v. Blue Cross Blue Shield of Ga., Inc.*, 755 F. Supp. 1055, 1056–57 (S.D. Ga. 1990)). Thus, a "court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts." *Harrison*, 176 F.3d at 784.

OceanFirst has adequately pleaded under Rule 9(b) that Brink's made a false representation. It alleges that, on numerous occasions, Brink's informed OceanFirst that an investigation into the missing $500,000 was underway but that, in fact, no such investigation was taking place. OceanFirst identifies a call attended by Michele Emery, Danny J. Pack, Bruce Fields, and Heriberto Cuevas—all employees of Brink's—during which Brink's represented to OceanFirst an investigation was ongoing. OceanFirst also identifies a March 5, 2011 call with Trip Davis, a Brink's employee, during which Brink's again represented to OceanFirst that the investigation continued. Although OceanFirst does not identify the speakers of the purportedly false statements, it does specify which of the defendant's employees attended the calls, allowing the reasonable inference that one of them made the false representations. OceanFirst thus identifies the dates of specific statements, the means through which they were communicated, and the identities of the persons responsible. The Court is satisfied that OceanFirst's allegations are sufficient to put Brink's on notice about the relevant communications and that OceanFirst has substantial prediscovery evidence regarding those communications. *See Harrison*, 176 F.3d at

784.  Accordingly, OceanFirst meets Rule 9(b)'s pleading standard with respect to the first element of fraudulent representation.

OceanFirst has adequately alleged the remaining elements of fraud.  As to Brink's state of mind, OceanFirst alleges generally that Brink's knew the statements were false and that the statements were made either recklessly or intentionally "as a delay tactic to fraudulently avoid liability."  ECF 1, ¶¶ 80–81.  Rule 9(b) permits general state-of-mind allegations of this sort.  OceanFirst also adequately alleges reasonable and detrimental reliance by asserting it "spent months and incurred the time and expense of following-up with Brink's via weekly phone calls and via e-mail with the expectation that Brink's was, as it represented, working to resolve the matter."  ECF 1, ¶ 86.  And as for damages, insofar as OceanFirst alleges its damages are the time and expenses associated with its efforts to inquire about Brink's investigation,  OceanFirst has alleged the final element of fraudulent misrepresentation claim.

However, to the extent OceanFirst alleges the damage caused by the fraudulent misrepresentations is its inability to recover the missing $500,000 and/or any interest on the funds, it fails to plead reasonable reliance.  OceanFirst alleges that it did not file a claim for the $500,000 for over a year while Brink's represented it was investigating the loss and that Brink's eventually claimed the matter was too old for any further discussion and refused to pay the claim.  OceanFirst says it would have filed a claim for the $500,000 immediately upon learning the money was missing if Brink's had not misrepresented that it was investigating the disappearance.  But OceanFirst does not allege why its decision not to file a claim was reasonable under the circumstances.  OceanFirst does not allege, for example, that it could not have filed a claim or initiated an independent investigation at the same time that Brink's was purportedly conducting its own investigation.  There is also no allegation that Brink's represented to OceanFirst that it waived

the Agreement's requirement that a claim be brought within a specific period.  Based on the allegations in the complaint, the Court cannot plausibly infer that it was reasonable for OceanFirst, a commercial financial institution, not to file a claim under the Agreement for the missing half-million dollars because Brink's said the investigation into the missing money was ongoing.  *See Learning Works, Inc.*, 830 F.2d at 546 (affirming dismissal of fraudulent misrepresentation claim where the "complaint contain[ed] no factual allegations that would support [the plaintiff's] claim that such reliance was reasonable").

The motion to dismiss Count V is denied to the extent OceanFirst alleges its damages are the time and resources expended during the discussions with Brink's about the investigation into the missing delivery.  The motion to dismiss Count V is granted to the extent OceanFirst's alleged damages are the missing $500,000 and accrued interest.

## IV.   Conclusion

OceanFirst has failed to plead claims for negligence and unjust enrichment.  Accordingly, the motion to dismiss, ECF 13, is granted in part, and Counts II and III are dismissed.  Count V is dismissed in part to the extent it seeks damages other than those resulting from the time and expense associated with discussing the status of the investigation with Brink's.  The motion is denied as to the remainder of Count V.  Counts I and IV, which are not the subject of the motion to dismiss, remain pending.

DATED this 23rd day of September, 2022.

_____
Deborah L. Boardman
United States District Judge